UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARTHUR SAMODOVITZ,

                Plaintiff,

    -v-                                         3:16-CV-1228

CAROL A. COCCHIOLA,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

ARTHUR SAMODOVITZ
Plaintiff, Pro Se
200 Rano Boulevard, #4C-27
Vestal, NY 13850

HON. ERIC T. SCHNEIDERMAN          LOUIS JIM, ESQ.
New York State Attorney General          Ass't Attorney General
Attorneys for Defendant
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

    On October 11, 2016, plaintiff Arthur Samodovitz ("Samodovitz" or "plaintiff"), proceeding pro se, initially filed this 42 U.S.C. § 1983 action against Carol A. Cocchiola, the Binghamton City Court Judge presiding over a civil case in which plaintiff is a named defendant. Plaintiff's § 1983 complaint asserted violations of his Fourteenth Amendment

rights to procedural due process and to equal protection arising from certain aspects of Judge Cocchiola's conduct in presiding over the pending state action.

On October 31, 2016, Judge Cocchiola, represented by the Attorney General of the State of New York, moved to dismiss Samodovitz's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because plaintiff had failed to state any viable claims. Plaintiff initially responded in opposition on November 14, 2016.

On December 29, 2016, Samodovitz filed a letter motion requesting leave to amend his complaint, primarily seeking to add Richard D. Northrup, Jr., a Broome County Court Judge, as a second defendant in this action. According to plaintiff, Judge Northrup was responsible for hearing an interlocutory appeal from his pending state court action. Plaintiff later filed a letter motion requesting that certain exhibits also be included with his proposed amended complaint.

On February 2, 2017, the Attorney General filed a letter motion requesting that Samodovitz's exhibits be struck under Rule 12(f). According to this letter, plaintiff's filing "casts aspersions on Judge Cocchiola's character and judicial conduct by implying that donations from the law firm of Levin, Gouldin & Thompson, LLP to various campaign committees, including that of Judge Cocchiola's, influenced Judge Cocchiola's judicial decisions in a matter pending in Binghamton City Court." At that time, the Attorney General also pointed out that although plaintiff is proceeding pro se, he is actually admitted to practice law in the State of Connecticut, making his behavior "especially outrageous."[1]

---

[1] A search for "Samodovitz" on the State of Connecticut's electronic "Attorney Firm Look-up" tool reveals that plaintiff is admitted to practice there. See https://www.jud.ct.gov/attorneyfirminquiry/AttorneyFirmInquiry.aspx.

- 2 -

The same day, Samodovitz filed a letter motion requesting that Judge Cocchiola "consent" to the filing of plaintiff's proposed amended complaint under the liberal standard established in Rule 15(a)(2). Thereafter, plaintiff filed an opposition to the Attorney General's letter motion to strike. All of these pending motions will be considered on the basis of the submissions and without oral argument.

## II.  BACKGROUND[2]

On October 5, 2010, Samodovitz met with a vascular surgeon employed by United Medical Associates of Johnson City, New York in an effort to determine the appropriate treatment for varicose veins in plaintiff's left leg. Am. Compl. ¶ 1. The surgeon recommended that plaintiff undergo an "ambulatory phlebectomy," a procedure where some veins are physically removed from the leg, as well as an "RF ablation," a procedure where other veins are sealed internally without being removed. Id. In preparation for these two surgical procedures, the surgeon required plaintiff to first have an ultrasonic "vein mapping" of his left leg. Id. ¶ 2. According to plaintiff, the surgeon recommended that this pre-surgical procedure take place at United Health Services Hospital ("UHS"). Id.

On January 11, 2011, Samodovitz underwent an ultrasonic vein mapping of his left leg at UHS. Am. Compl. ¶ 3. The bill from UHS for this procedure was "about $2148, and was excessive." Id. ¶ 4. According to plaintiff, the procedure was performed by a technician "and only took about 20 minutes." Id. Nevertheless, plaintiff and his insurer "paid this bill in full through error." Id. ¶ 5.

---

[2] For reasons that will be explained in greater detail below, the following allegations are taken from Samodovitz's proposed amended complaint, ECF No. 13-1, and are assumed true for purposes of resolving the pending motion to dismiss.

On March 16, 2011, Samodovitz underwent the two surgical procedures described above at the hands of the surgeon at UHS. Am. Compl. ¶ 6. The bill from UHS this time was "about $8457, which was excessive." Id. ¶ 7; see also id. ¶¶ 8-13, 18 (setting forth itemized charges on this bill as well as smaller, related bills invoiced as a result). Plaintiff's medical insurer paid "about $6,941" toward these services. Id. ¶ 19. However, plaintiff did not pay the balance remaining—"about $1542"—because "it appeared to plaintiff that UHS overcharged" for these services. Id. ¶ 20.

Following these two procedures, Samodovitz's surgeon directed him "to get an ultrasonic vein scan" of his left leg "to check for a clot, even though Plaintiff had no symptoms of a clot." Am. Compl. ¶ 21. Plaintiff complied even though "[t]his vein scan was unnecessary." Id. ¶ 22. The bill from UHS for this vein scan was "about $1100, and was excessive." Id. ¶ 23. Nevertheless, plaintiff and his insurer "paid this bill in full, through error." Id. ¶ 24.

Thereafter, UHS sued Samodovitz in Binghamton City Court for failing to pay the remainder of his past due balance. Am. Compl. ¶ 25. Judge Cocchiola is the presiding judge in that civil action. Id. ¶ 26. Further, UHS also "posted a defamatory notice with one or more credit agencies that Plaintiff failed to pay an allegedly improper bill." Id. ¶ 27.

During the pendency of this civil action, Judge Cocchiola has "improperly denied" certain of Samodovitz's motions to compel discovery. Am. Compl. ¶¶ 31-32. According to plaintiff, Judge Cocchiola has also "improperly delayed 11 months in deciding" UHS's request for a protective order, id. ¶ 33, only to "improperly grant[ ]" this request later, id. ¶ 34.

As a result of these improprieties, Samodovitz filed an interlocutory appeal to the Broome County Court, which was assigned to Judge Northrup. Am. Compl. ¶ 35. However,

Judge Northrup declined to hear the appeal because of a procedural error. Id. Thereafter, Judge Cocchiola "improperly impeded and delayed" additional discovery requests made by plaintiff. Id. ¶¶ 36-39. According to plaintiff, Judge Cocchiola "has engaged in a pattern of improper activity biased toward UHS" to "help cover-up unfair billing practices of UHS." Id. ¶ 40. Plaintiff has also twice requested that Judge Northrup disqualify Judge Cocchiola, but Judge Northrup has not responded to these requests. Id. ¶ 42.

### III. LEGAL STANDARDS

#### A. Failure to State a Claim

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts

stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

However, in some cases, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." Goel, 820 F.3d at 559. A document is only "integral" to the complaint "where it relies heavily upon its terms and effect." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

In other words, mere notice or possession of the document is not enough; rather, the plaintiff must have relied on the terms and effect of the document in drafting the complaint. See Goel, 820 F.3d at 559; see also Nicosia v. Amazon.com, Inc., –F.3d–, 2016 WL 4473225, at *5 (2d Cir. Aug. 25, 2016) (observing that this exception is typically invoked where the unincorporated material is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").[3]

### B. Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid

---

[3] Even then, consideration of such material is only proper if it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document and that there are no material disputed issues of fact regarding the material's relevance. Nicosia, 2016 WL 4473225, at *5.

claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (citations and internal quotation marks omitted); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Importantly, however, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). "A proposed amended is futile where it 'fails to state a claim' or 'where the claim or defense proposed to be added has no colorable merit." Corbett v. Napolitano, 897 F. Supp. 2d 96, 119 (E.D.N.Y. 2012) (quoting Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)). Accordingly, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

### C. Pro Se Pleadings

The basic pleading requirements set forth above apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (internal quotation marks and footnote omitted). Even a pro se plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. See id. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION[4]

Where, as here, "a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." Hamzik v. Office for People with Dev. Disabilities, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (quoting Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

In the interest of judicial efficiency, the merits of the pending dismissal motion will be considered in light of the allegations in Samodovitz's proposed amended complaint as amplified by his supporting exhibits. See, e.g., Boguslavsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.").

Samodovitz brings § 1983 claims based on the Equal Protection and Due Process clauses of the Fourteenth Amendment. Plaintiff requests that Judge Cocchiola and Judge Northrup both be disqualified and enjoined from having any further involvement in his state

---

[4] Samodovitz's proposed amended complaint appears to contain one or more state law claims. Those claims will be addressed in the Conclusion.

- 8 -

case. Plaintiff also requests vacatur of certain prior orders entered in his state case "due to bias." Finally, plaintiff requests monetary and punitive damages against each defendant.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). However, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Accordingly, to prevail on a § 1983 claim, a plaintiff must show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. See 42 U.S.C. § 1983.

Upon review, Samodovitz's claims are improper and will be dismissed. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (collecting cases). The purpose of this judicial immunity is to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Id. (citation omitted). Importantly, "even allegations of bad faith or malice cannot overcome judicial immunity." Id.

Further, the 1996 Congressional amendments to the text of 42 U.S.C. § 1983 provide that "in any action brought against a judicial officer for an act or omissions taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Of course, the broad sweep of the doctrine of absolute immunity is not without its outer limits. For instance, it does not shield judges from liability for so-called "nonjudicial

actions, *i.e.*, actions not taken in the judge's judicial capacity." Mireles v. Waco, 502 U.S. 9, 11 (1991). "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches,'" Bliven, 579 F.3d at 209-210 (quoting Forrester v. White, 484 U.S. 219, 227 (1988) (emphasis in original).

"[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978).

Ultimately, "if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Ceparano v. Southampton Justice Court, 404 F. App'x 537, 539 (summary order) (quoting Stump, 435 U.S. at 356-57).

After carefully reviewing all of Samodovitz's submissions, it is patently clear that the broad sweep of the doctrine of absolute judicial immunity shields both Judge Cocchiola and Judge Northrup from all of plaintiff's claims. See Ceparano, 404 F. App'x at 539 ("A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity."); McKnight v. Middleton, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) (observing that the doctrine of absolute judicial immunity shields judicial defendants in both their individual and official capacities); Bracci v. Becker, 2013 WL 123810, at *5 (N.D.N.Y. Jan. 9, 2013) (D'Agostino, J.) ("While absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under § 1983

absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable."). Accordingly, Judge Cocchiola's motion to dismiss will be granted and plaintiff's motion to amend will be denied as futile.

## V. **CONCLUSION**

Samodovitz's submissions fail to state any plausible claims for relief. Although district courts in this Circuit are generally reluctant to dismiss a pro se plaintiff's action without permitting leave to replead, the Second Circuit has explained that it is nevertheless appropriate to do so in cases "[w]here it appears that granting leave to amend is unlikely to be productive." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).

That is certainly the case here, especially given that Samodovitz's additional filings failed to cure the defects initially identified in the defendant's motion papers. Further, to the extent that plaintiff's proposed amended pleading might also be construed to assert one or more claims based on state law, supplemental jurisdiction over any such claims is declined. See 28 U.S.C. § 1367(c)(3).

Finally, given the well-settled scope of the doctrine of absolute judicial immunity set forth above and the fact that Samodovitz appears to be an attorney admitted to practice in the State of Connecticut, plaintiff is advised to read carefully the requirements imposed by Federal Rule of Civil Procedure 11(b) before making any further representations to this Court.

Therefore, it is

ORDERED that

1. Judge Cocchiola's motion to dismiss is GRANTED; and

2. Samodovitz's complaint is DISMISSED.

The Clerk of the Court is directed to terminate all pending motions and close this case.

IT IS SO ORDERED.

Dated: April 19, 2017
       Utica, New York.

_____
United States District Judge